**GENI–CHLOR INTERNATIONAL, INC., a corporation, Plaintiff/Appellee,**

v.

**MULTISONICS DEVELOPMENT CORP., a corporation, Defendant/Appellant.**

No. 76–1993.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1978.

---

Ed W. Hendren (argued), Palo Alto, Cal., for defendant-appellant.

Thomas O. Herbert (appeared), David E. Lovejoy (argued), of Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for plaintiff-appellee.

Before KILKENNY, TRASK and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Appellant Multisonics Development Corporation (Multisonics) agreed to sell to appellee Geni-Chlor International, Inc. (Geni-Chlor) a patent for a "Swimming Pool Water Conditioner," along with "related inventions and know-how applicable to swimming pool use and pertaining to hypochlorite generating processes and apparatus." A detailed written contract was prepared and executed by the parties on March 9, 1973. The contract provided for a purchase price of $201,000, payable with regular installments. Multisonics retained title to the patent as security until the full purchase price was paid, but granted Geni-Chlor an exclusive license to utilize the patent and related know-how in the interim. The contract also required that all disputes, except for those concerning the validity of the patent, be arbitrated. Geni-Chlor agreed to Multisonics' express disclaimer of warranty of the patent's validity.

Geni-Chlor failed to pay the January 1974 installment. Multisonics gave notice of default and submitted the matter to arbitration. The parties and the arbitrator agreed that the validity of the patent could not be determined by the proceedings. Geni-Chlor did not then try to obtain a collateral judgment that the patent was invalid, but participated in the arbitration, claiming that it was a licensee of the patent and could claim invalidity of the patent as a defense in a contract action under the theory of *Lear, Inc., v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

The arbitrator found that the contract was a good faith agreement to purchase an unwarranted patent, and that other consideration included in the agreement would support the contract even if the patent should be invalid. Multisonics was awarded the balance owed under the contract, $190,-000 plus interest.

The arbitrator's decision was mailed to the parties on February 10, 1975. Multisonics was required by California Civil Procedure Code § 1288.4[1] to wait 10 days after service of the award before it could confirm the award in state court. On February 11 Geni-Chlor filed this action in United States District Court for declaratory judgment that the patent is invalid, to set aside the arbitrator's award, and to permanently enjoin Multisonics from enforcing the award. Jurisdiction was claimed under 28 U.S.C. § 1338(a), which provides that "the district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents. . . ." The parties are both California corporations, precluding jurisdiction based on diversity.

Multisonics moved to confirm the arbitration award in state court upon expiration of the 10-day waiting period. The state court denied confirmation and stayed its proceedings pending the outcome of this action.

The district court denied Multisonics' motion to dismiss under Federal Rule of Civil Procedure 12(b). Multisonics then admitted the patent's invalidity. Geni-Chlor was awarded summary judgment enjoining enforcement of the arbitration award and declaratory judgment that the patent was invalid. Multisonics brings this appeal, challenging the district court's jurisdiction over the subject matter and the award of summary and declaratory judgment. We find that the district court did have jurisdiction to consider this action but hold that the district court should have stayed its proceedings until final adjudication in the state court proceedings concerning the arbitration award.

█ Geni-Chlor contends the district court's jurisdiction exists because the action "arises under" the patent laws pursuant to 28 U.S.C. § 1338(a). We agree, although the issue is a close one indeed.[2] It is well established that notwithstanding the substantial federal interest in patent matters, enforcement and construction of patent contracts can be the business of state courts, even though a *question* arising under the patent laws is presented. Federal courts assume jurisdiction only when the *case* "arises under" the patent laws. *Pratt v. Paris Gas Light & Coke Company*, 168 U.S. 255, 259, 18 S.Ct. 62, 42 L.Ed. 458 (1897); *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 420 (7th Cir. 1977).

The cases establishing the meaning of "arising under" jurisdiction begin with *Wilson v. Sandford*, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850). There the plaintiff licensor sought to void a contract because of the licensee's failure to pay as required by the contract while the licensee defended, *inter alia*, on the ground that the patent had expired. The court held that the case did not "arise under" the patent laws, thus barring federal jurisdiction. *Id.* at 101. *Pratt v. Paris Gas Light & Coke Company, supra,* held that a state court retains jurisdiction over a patent contract dispute although the defendant claims that the patent was invalid. 168 U.S. at 259, 18 S.Ct. 62. In a somewhat similar case, Mr. Justice Holmes noted:

whether it [threats to sue users of plaintiff's pumps for patent infringement] is a wrong or not depends upon the law of the state where the act is done, not upon the patent law, and therefore the suit arises under the law of the state.

*American Well Works Company v. Layne and Bowler Company*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).

In *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964) we put the matter this way:

Long before the enactment of the Federal Declaratory Judgments Act the Supreme Court had established two correlative rules relating to jurisdiction in patent matters. The first is that a case is

---

1. "No petition may be served and filed under this chapter until at least 10 days after service of the signed copy of the award upon the petitioner."

2. Our holding makes it unnecessary to consider whether jurisdiction exists based either on "federal common law" under 28 U.S.C. § 1331(a), or on the Federal Arbitration Act, 9 U.S.C. § 10.

within the exclusive federal jurisdiction when it seeks to enforce a patent against an infringer, even though the complaint may show, in anticipation of a defense, the existence of an agreement between the parties relating to the patent. The second is that if the suit is to enforce or to revoke a patent licensing or other similar agreement, it "is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such." (citations omitted) [3]

█ It is beyond dispute that the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, does not confer jurisdiction on a federal court to declare a patent invalid under 28 U.S.C. § 1338(a). The Act provides that a federal court may issue a declaratory judgment "in a case of actual controversy *within its jurisdiction . . .*" (Emphasis added). Thus, a declaratory judgment must conform to traditional jurisdictional requirements. *Milprint, supra,* 562 F.2d at 421. Declaratory judgment merely provides procedural and remedial flexibility to the federal courts. It does not, however, extend their jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Nonetheless, this court held in *Lear Siegler, Inc. v. Adkins,* 330 F.2d at 598, that the federal district court had jurisdiction under 28 U.S.C. § 1338(a) to hear a complaint seeking a declaratory judgment in which the plaintiff's purpose was "to test the validity of the appellee's [defendant's] patent and to establish that what Lear [plaintiff] is doing does not infringe the patent if it is valid." The fact that the plaintiff's action might reveal a contract between the parties relating to the patent did not preclude the complaint from setting forth an action "arising under" the patent laws. We did not stop there, however. We further held that the declaratory judgment procedure should not be used as a device to bring within federal jurisdiction a controversy in litigation in a state court. As a consequence, we concluded that the federal district court acted properly in staying its proceedings until the final adjudication in the related state proceedings.

█ We hold the district court in this case should have followed the example of the *Lear* district court. To act otherwise under the circumstances of this case was an abuse of discretion. In so holding, we treat the complaint in this case as not significantly different from that in *Lear Siegler,* although our opinion in *Lear Siegler,* 330 F.2d at 597, suggests the possibility that the *Lear* complaint was more focused on the alleged invalidity of the patent than is the case here. Geni-Chlor's complaint seeks a declaratory judgment that a specific patent is invalid. Invalidity is necessary to Geni-Chlor's ultimate success in this dispute. Therefore, we cannot say that the purposes of the plaintiff in filing the action did not include the testing of the validity of the patent. Constrained as we are by *Lear Siegler,* we hold jurisdiction under 28 U.S.C. § 1338(a) exists. We recognize that our holding regarding federal jurisdiction can be considered as being in conflict with the

---

**3.** *See also American Well Works Co. v. Layne and Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) (suit for damages to business caused by threat to sue under the patent laws is not a case arising under the patent laws, and belongs in state court); *Odell v. Farnsworth Co.,* 250 U.S. 501, 503, 39 S.Ct. 516, 63 L.Ed. 1111 (1919) (suit by patentee to compel accounting for royalties under a contract assignment of patent does not arise under the patent laws); *Luckett v. Delpark, Inc.,* 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926) (no federal jurisdiction of action to recover royalties under a license, assignment, or other contract incident); *Koratron Co. v. Deering Milliken, Inc.,* 418 F.2d 1314, 1317 (9th Cir. 1969), *cert. denied,* 398 U.S. 909, 90 S.Ct. 1692, 26 L.Ed.2d 68 (1970) ("When the subject matter of the contract interfered with is a patent or the prospective economic advantage relates to a patent, questions of patent law will often arise in the controversy. But that fact does not make the action one arising under the patent laws."); *Kysor Industrial Corp. v. Pet, Inc.,* 459 F.2d 1010 (6th Cir. 1972), *cert. denied,* 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 243 (1972) (contract dispute belongs in state court, although a patent law defense exists); *Milprint, Inc. v. Curwood, Inc.,* 562 F.2d 418 (7th Cir. 1977) (action for declaratory judgment of patent invalidity to eliminate a licensee's contract obligations does not arise under the patent laws).

985

Seventh Circuit's *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418 (7th Cir. 1977). In *Milprint* the court said:

> Accordingly, we hold that where diversity is lacking, a patent licensee's declaratory complaint which asserts patent invalidity simply to avoid the obligations of the license does not state a claim arising under the patent laws within the meaning of 28 U.S.C. § 1338(a).

*Id.* at 422.

■■■ Jurisdiction to enter a declaratory judgment, however, "does not require that the court exercise it. It has a judicial discretion to decline to grant such relief." 330 F.2d at 599. This discretion should be employed to avoid uncoordinated and unnecessarily disruptive adjudications of disputes in which state and federal issues are intertwined. *Cf. Kerotest Mfg. Co. v. C–O–Two F. E. C.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952). This is not accomplished when it is exercised in a manner that permits the declaratory judgment procedure to be used as a device to snatch from the state courts a dispute concerning obligations under a contract purporting to assign patent rights. Not only did we recognize this in *Lear Siegler* but also in its ancestor, *H. J. Heinz Co. v. Owens*, 189 F.2d 505 (9th Cir. 1951).

Nor do the "device" aspects of plaintiff's declaratory judgment efforts recede when it is recognized that the ultimate resolution of the dispute before us very likely will turn on the application of the Supreme Court's decision in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) in which the Court vacated the judgment of the California Supreme Court in the litigation from which we abstained as our *Lear Siegler* decision indicates. The Supreme Court's *Lear* removes the bar which previously had prevented a licensee of a patent from challenging the validity of the licensed patent and permits the licensee to avoid his obligation to pay royalties should the patent be invalid. The state courts are no more disabled from interpreting the Supreme Court's *Lear* than they are to determine the validity of a patent in a suit to enforce a contract pertaining to a patent. The fact remains that in this case the plaintiff seeks to oust state courts from determining the meaning of a contract under which he may, or may not, be relieved of liability by reason of the patent's now acknowledged invalidity and the teaching of the Supreme Court's *Lear*. That is enough to require that discretion be exercised by the district court to stay its proceedings until final adjudication of all rights by the state courts in Multisonics' effort to have its arbitration award confirmed. We are certain that the state court will withdraw its stay of such proceedings when our judgment becomes final.

Reversed and Remanded To Stay Proceedings.